## UNITED STATES BANKRUPTCY COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

In re:

**COOKEVIILE MARBLE &
GRANITE, INC.,**

   Debtor.

Case No. 11-08175
Chapter 11
Judge Keith M. Lundin

ORIGINAL DISCLOSURE STATEMENT
DESCRIBING ORIGINAL CHAPTER 11
PLAN

## TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.    Purpose of This Document . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing . . . . . . 4
        1.    Time and Place of the Confirmation Hearing . . . . . . . . . . . . . . . . . . . . . 4
        2.    Deadline for Voting For or Against the Plan . . . . . . . . . . . . . . . . . . . . . . 4
        3.    Deadline for Objecting to the Confirmation of the Plan . . . . . . . . . . . . . 5
        4.    Identity of Person to Contact for More Information Regarding the Plan. . 5
    C.    Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
II.    **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    Description and History of the Debtor's Business . . . . . . . . . . . . . . . . . . . . . . . 5
    B.    Management of the Debtor Before and After the Bankruptcy . . . . . . . . . . . . . 5
    C.    Events Leading to Chapter 11 Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.    Significant Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . 6
        1.    Bankruptcy Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.    Other Legal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers. 7
        4.    Procedures Implemented to Resolve Financial Problems . . . . . . . . . . . 7
        5.    Current and Historical Financial Conditions . . . . . . . . . . . . . . . . . . . . . 7
III.    **SUMMARY OF THE PLAN OF REORGANIZATION** . . . . . . . . . . . . . . . . . . . . . . 7
    A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan. . . . 7
    B.    Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.    Administrative Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.    Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    C.    Classified Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.    Classes of Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    Classes of Priority Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . 10
        3.    Classes of General Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . 11
        4.    Class(es) of Interest Holders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    D.    Means of Effectuating the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        1.    Funding for the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.    Post-Confirmation Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        3.    Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.    Risk Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

F.     Other Provisions of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     1.     Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . . . . . . 12
           a.     Assumptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           b.     Rejections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     2.     Changes in Rates Subject to Regulatory Approval . . . . . . . . . . . . . . . . 13
     3.     Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
G.     Tax Consequences of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**IV.     CONFIRMATION REQUIREMENTS AND PROCEDURES** . . . . . . . . . . . . . . . 13
A.     Who May Vote or Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     1.     Who May Object to Confirmation of the Plan . . . . . . . . . . . . . . . . . . . 14
     2.     Who May Vote to Accept/Reject the Plan . . . . . . . . . . . . . . . . . . . . . . 14
           a.     What is an Allowed Claim/Interest . . . . . . . . . . . . . . . . . . . . . . . 14
           b.     What Is an Impaired Claim/Interest . . . . . . . . . . . . . . . . . . . . . . . 15
     3.     Who is <u>Not</u> Entitled to Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     4.     Who Can Vote in More Than One Class . . . . . . . . . . . . . . . . . . . . . . . . 16
     5.     Votes Necessary to Confirm the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     6.     Votes Necessary for a Class to Accept the Plan . . . . . . . . . . . . . . . . . . 16
     7.     Treatment of Nonaccepting Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     8.     Request for Confirmation Despite Nonacceptance by Impaired
           Class(es). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
B.     Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
C.     Feasibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**V.     EFFECTS OF CONFIRMATION OF PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
A.     Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
B.     Revesting of Property in the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
C.     Modification of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
D.     Post-Confirmation Status Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
E.     Quarterly Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
F.     Post-Confirmation Conversion/Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . 23
G.     Final Decree . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**VI.     SUPPORTING DECLARATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
EXHIBIT A - LIST OF ALL ASSETS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# I.

## INTRODUCTION

Cookeville Marble & Granite, Inc. is the Debtor in a Chapter 11 bankruptcy case. On August 17, 2011, Debtor commenced a voluntary bankruptcy case by filing a Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq., Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a combination plan. In other words, the Proponent seeks to accomplish payments under the Plan by using Debtor's income and by supplementing the income by selling assets of the estate. The Effective Date of the proposed Plan is 45 days after confirmation.

### A. Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1) **WHO CAN VOTE OR OBJECT,**

(2) **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

(3) **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4)     **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

(5)     **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6)     **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has conditionally approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.      Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place at a yet to be determined date at 701 Broadway Ave., Nashville, TN 37203. Notice will be given regarding the date and time of this hearing.

**2.      Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

Steven L. Lefkovitz

618 Church St., Ste. 410

Nashville, TN 37219.

Your ballot must be timely received or it will not be counted.

**3.      Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon

Steven L. Lefkovitz, counsel for Debtor, by the date and time set by the Clerk's office.

**4.      Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Steven L.

Lefkovitz, (615) 256-8300, 618 Church St., Ste. 410, Nashville, TN 37219.

**C.      Disclaimer**

The Debtor has made no separate appraisal of the Debtor's real and personal property

assets but the Debtor believes that values contained herein are accurate. The Debtor believes this

to be a fair and equitable estimate of the value of his assets as of August 12, 2011.  The

information contained in this Disclosure Statement is provided by the Debtor. The Plan

Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's

best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and

makes no recommendation as to whether or not you should support or oppose the Plan.


## II.

## BACKGROUND

**A.      Description and History of the Debtor's Business**

The Debtor is a business that produces and installs made to order marble and granite

monuments. The company has been in operation since 1971.

**B.      Management of the Debtor Before and After the Bankruptcy**

The Debtor managed its own affairs prior to the bankruptcy and will continue to manage

its affairs after the bankruptcy.

**C.    Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that <u>led to the filing</u> of this Chapter 11 case: Due to a downturn in the economy the number of orders decreased dramatically. Debtor fell behind on both secured and unsecured debts, as well as taxes, and filed the bankruptcy in order to provide for a reasonable repayment plan for its debts and to bring them more in line with the current income of the corporation.

**E.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

This disclosure statement and corresponding plan are being filed on the same da as te bankruptcy petition. Therefore, there are no significant events which have occurred <u>during</u> this case.

Currently, there are no significant adversary proceedings pending.

**2.    Other Legal Proceedings**

The Debtor is not involved in any non-bankruptcy legal proceedings at the time of filing.

**3.    There have been no Preferential or Fraudulent Transfers**

**4.    Procedures Implemented to Resolve Financial Problems**

To attempt to fix the problems that led to the bankruptcy filing, Debtor has been trying to secure additional contracts for orders in order to ensure the payments of Debtor's creditors.

**5.    Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit A.  See also the Debtor's financial history set forth in the monthly operating reports.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

**A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class.

**1.      Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

There are no administrative claims under the Plan.

**2.      Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists <u>all</u> of the Debtors' Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| ● Name = IRS<br>● Type of tax = WT-FICA<br>● Date tax assessed =<br>    2008 - Present | Unknown | ● Payment interval<br>● Pymt amt/interval<br>● Begin date<br><br><br><br>● End date<br>● Interest Rate<br>● Total Payout Amount 100% | = Monthly<br>= Unknown<br>= 1st day of Month after Effective Date<br>= August 1, 2016<br>= 3.00%<br>= Unknown |
| ● Name = TN Dept. of Revenue<br>● Type of tax = Franchise & Excise, Sales & Use<br>● Date tax assessed =<br>    2008 - Present | Unknown | ● Payment interval<br>● Pymt amt/interval<br>● Begin date<br><br><br><br>● End date<br>● Interest Rate<br>● Total Payout Amount 100% | = Monthly<br>= Unknown<br>= 1st day of Month after Effective Date<br>= August 1, 2016<br>= 3.00%<br>= Unknown |
| ● Name = TN Dept. of Labor and Workforce<br>● Type of tax = Unemployment Insurance<br>● Date tax assessed =<br>    2008 - Present | Unknown | ● Payment interval<br>● Pymt amt/interval<br>● Begin date<br><br><br><br>● End date<br>● Interest Rate<br>● Total Payout Amount 100% | = Monthly<br>= Unknown<br>= 1st day of Month after Effective Date<br>= August 1, 2016<br>= 3.00%<br>= Unknown |

**C.**     **Classified Claims and Interests**

    **1.**     **Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| 3-A | Secured claim of:<br>• Name = Community Bank of the Cumberlands<br>• Collateral description = Real property located at 149 W. Spring St., Cookeville, TN<br>• Collateral value = $500,000.00<br>• Priority of security int. = First<br>• Principal owed = $369,827.00<br>• Total claim amount = $369,827.00 | N | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval<br>• Pymt amt/interval<br>• Begin date<br><br><br>• End date<br><br><br>• Interest rate<br><br><br><br>• Total payout 100%<br>• Treatment of Lien | = Monthly<br>= $2,492.06<br>= 1st day of month after Effective Date<br>= Sixty months from first payment<br>= 5.25% with a 20 year amortization schedule<br>= $459,528.02<br><br>= Retained until completion |

| | | | | |
|---|---|---|---|---|
| 3-B | Secured claim of:<br>• Name = Wells Fargo<br>• Collateral description = Ingersol Rand Compressor<br>• Collateral value = $5,500.00<br>• Priority of security int. = First<br>• Principal owed = $5,500.00<br>• Total claim amount = $5,500.00 | N | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval  = Monthly<br>• Pymt amt/interval  = $99.44<br>• Begin date  = 1ˢᵗ day of month after Effective Date<br>• End date  = Sixty months from first payment<br>• Interest rate  = 3.25%<br>• Total payout  = $5,966.40 100% |

### 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

There are no priority unsecured claims under the plan.

### 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing <u>all</u> of Debtor's general unsecured claims (see Exhibit D for detailed information about each general unsecured claim):

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 4 | General unsecured claims <br><br> • Total amt of claims = Unknown | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval <br> • Pymt amt/interval <br> • Begin date <br><br> • End date <br><br><br> • Interest rate <br> • Total payout 100 % | = Monthly <br> = Unknown <br> = 1st day of month after Effective Date <br> = 120 Months after effective date <br> = 0.00% <br> = Unknown |

## 4. Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Interest holders | N | Will maintain all stock |

## D. Means of Effectuating the Plan

### 1. Funding for the Plan

The Plan will be funded by the following: Income from Debtor's business operations.

### 2. Post-confirmation Management

The Debtor shall be responsible for post-confirmation management.

### 3. Disbursing Agent

Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

### E. Risk Factors

The proposed Plan has the following risks: The Plan, due to its nature of being funded over time, maintains a possibility of default if Debtor is unable to realize its current financial projections or somehow is unable to maintain the same level of monthly income.

**F.      Other Provisions of the Plan**

**1.      Executory Contracts and Unexpired Leases**

**a.      Assumptions**

There are no unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan.

**b.      Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

All executory contracts and leases not explicitly assumed above.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT HAS YET TO BE DETERMINED. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**2.      Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**3.      Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

**G.      Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The Debtor is unaware of any tax consequences which the Plan will have on the Debtor's tax liability

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

**A.      Who May Vote or Object**

**1.      Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**2.      Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### a. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS YET TO BE DETERMINED. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibit B to see how the Proponent has characterized your claim or interest.

### b. What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 3 and 4 are impaired and that holders of claims in this class are therefore entitled to vote to accept or reject the Plan. The Proponent believes that all other classes are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the

Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3. Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least

two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

**7.      Treatment of Nonaccepting Classes**

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

**8.      Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes 3 and 4 if any of these classes do not vote to accept the Plan.

Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes: Classes 3 and 4**.** AS A RESULT, IF ANY OF THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

**B.      Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a

lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons: Creditors will receive at least as much as they would in a Chapter 7 liquidation case.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.  (See Exhibit E for a detailed explanation of how the following assets are valued. This information is provided by the Debtor.)

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS
a.  Cash on hand                                        $ 13,000.00
b.  Accounts receivable                                 $ 40,000
c.  Inventories                                         $ 1800,000.00

    TOTAL CURRENT ASSETS                           $ 233,000.00

FIXED ASSETS
a.  Business fixtures & equipment                       $ 153,500.00
b.  Automobiles                                         $ 4,500.00
c.  Building & Land                                     $ 500,000.00

    TOTAL FIXED ASSETS                             $ 658,000.00

OTHER ASSETS
a.  Customer list                                       $ 0.00
b.  Other intangibles                                   $ 0.00

    TOTAL OTHER ASSETS                             $ 0.00

**TOTAL ASSETS AT LIQUIDATION VALUE**                   **$ 891,000.00**
                                                        =========
**Less:**
Secured creditor's recovery                             $ 375,327.00
**Less:**
Chapter 7 trustee fees and expenses                     $ 29,031.00
**Less:**
Chapter 11 administrative expenses                      $ 0.00
**Less:**
Priority claims,                                        $ 70,000.00 (est.)
excluding administrative expense claims
**Less:**
Debtor's claimed exemptions                             $ 0.00
                                                        =========
 (1) Balance for unsecured claims                   $ 416,642.00

 (2) Total amt of unsecured claims                  $ Unknown

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE
   OR RETAIN IN A CH. 7 LIQUIDATION: =  100.0%
% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE
   OR RETAIN UNDER THIS PLAN:        =  100%**

---

[1]/     Note:   The deficiency portion of a secured recourse claim must be added to the total amount of
         unsecured claims.

[2]/     Note:   If this percentage is greater than the amount to be paid to the unsecured creditors on a
         "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains
         acceptance by every creditor in the general unsecured class.

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Priority Tax Claims | 100% | 100% |
| Class 3 – Secured Claims | 100% | 100% |
| Class 4 – Unsecured Claims | 100% | 100% |

## C.     Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date | $  10,000.00 |
| **To Pay:** Administrative claims | - 0.00 |
| **To Pay:** Statutory costs & charges | - 0.00 |
| **To Pay:** Other Plan Payments due on Effective Date | - 0.00 |
| Balance after paying these amounts............... | $ 10,000.00 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $ 5,000.00 | Cash in DIP Account now |
| + 5,000.00 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| + 0.00 | Borrowing |
| + 0.00 | Capital Contributions |
| + 0.00 | Other |
| $ 10,000.00 | **Total** |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent has provided financial statements which include both historical and projected financial information. Please refer to the monthly operating reports for the relevant financial statements. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay and estimated $4,200.00 each month in consistent secured and unsecured payments as well as a varying monthly payment each month to a priority or secured creditor.  As Debtor's financial projections demonstrate, Debtor will have an average cash flow, after paying operating expenses and post-confirmation taxes, of $4,500.00 each month for the life of the Plan.  The final Plan payment is expected to be paid ten years after the effective date. The Plan Proponent contends that Debtor's financial projections are feasible.

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.      Discharge**

This Plan provides that on the date the case is closed, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in the plan.

**B.      Revesting of Property in the Debtor**

Except as provided in Section {V.E.}, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.      Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.      Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.      Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: August 17, 2011

/s/ Steven L. Lefkovitz, No. 5953
STEVEN L. LEFKOVITZ
Counsel to the Debtor
618 Church Street, Suite 410
Nashville, TN  37219
(615) 256-8300 fax (615) 255-4516
Email slefkovitz@lefkovitz.com

# VI.

## SUPPORTING DECLARATIONS

## EXHIBIT A - LIST OF ALL ASSETS

| Market Value | Secured Value | Equity | Description |
|---|---|---|---|
| $500,000.00 | $369,827.09 | $130,172.91 | Real property located at 149 West Spring St., Cookeville, TN |
| $5,000.00 | $0.00 | $5,000.00 | Cash on Hand |
| $40,000.00 | $0.00 | $40,000.00 | Accounts Receivable |
| $180,000.00 | $0.00 | $180,000.00 | Inventory |
| $153,500.00 | $0.00 | $153,500.00 | Equipment & Machinery |
| $4,500.00 | $0.00 | $4,500.00 | 1993 International Boom Truck |